# United States Court of Appeals

### *for the*

# Eleventh Circuit

---

### Case No. 21-10456

---

### TL90108 LLC,

*Petitioner-Appellant,*

–v–

### JOSEPH LOUIS FORD, III,

*Respondent-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of Florida, No. 19-10309-EPK.
The Honorable **Erik P. Kimball**, U.S. Bankruptcy Judge Presiding.

## BRIEF OF APPELLANT

Neil Lloyd
(admitted and counsel of record)
Lawrence H. Heftman
(application pending)
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
nlloyd@schiffhardin.com
lheftman@schiffhardin.com

*Counsel for Appellant*
TL 90108, LLC

 

**TL90208 LLC v. JOSEPH LOUIS FORD, III, Case No. 21-10456**
**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1, Appellant TL90108 LLC makes the below disclosures. The following persons or entities have an interest in the outcome of this appeal:

- Boley, Robert D. – Counsel for Appellant

- Ford III, Joseph Louis – Debtor/Respondent

- Heftman, Lawrence H. – Counsel for Appellant

- Kimball, Judge Erik P. – Bankruptcy Court Judge

- Lloyd, Neil – Counsel for Appellant

- Marra, Judge Kenneth A. – District Court Judge

- Roher, Mark S. – Counsel for Debtor/Appellee

- TL90108 LLC – Appellant TL90108, LLC is not a publicly held corporation and has no parent corporation. No publicly held corporation owns 10% or more of its stock.

- Turek, David – Counsel for Debtor/Appellee

There is no debtor in the underlying bankruptcy proceeding who is not named in the caption.

No publicly traded company or corporation has an interest in the outcome of this appeal.

C-1

## 11th Cir. R. 28-1(c) Statement Regarding Oral Argument

TL90108 LLC ("TL") desires to present oral argument. The issue presented in this case — whether the federal courts have the power to grant equitable or due process exceptions to Bankruptcy Rule 4007, particularly in light of *Kontrick v. Ryan*, 540 U.S. 443 (2004) — involves inter- and intra-Circuit splits. TL accordingly suggests that oral argument may assist in the Court's resolution of the appeal.

## Table of Contents

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................C-1

11TH CIR. R. 28-1(C) STATEMENT REGARDING ORAL ARGUMENT .........i

TABLE OF CITATIONS ...................................................................... iii

11TH CIR. R. 28-1(G) STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ................................................... viii

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE ...................................................................1

    A.   Course of Proceedings and Disposition in the Bankruptcy Court. ...................................................................................1

    B.   Statement of Facts. ..........................................................6

    C.   Statement of the Standard of Review. ................................12

SUMMARY OF THE ARGUMENT ..................................................12

ARGUMENT ..................................................................................16

I. RULE 4007 IS SUBJECT TO EQUITABLE AND DUE PROCESS EXCEPTIONS. ...........................................................................16

    A.   Legal Standards. ...........................................................16

    B.   *Alton* Rested on the Premise that Rule 4007(c) is Jurisdictional. ......19

    C.   *Kontrick* Eliminated the Jurisdictional Underpinning of *Alton* .........21

    D.   The Court Should Rescind *Alton*'s No Equitable Tolling Rule. ........24

    E.   The Court Should Re-Affirm the Due Process Exception. ................31

CONCLUSION .................................................................................39

# Table of Citations

**Page(s)**

**Cases**

*Alabama Department of Economic & Community Affairs v. Lett*,
  368 Fed. Apps. 975 (11th Cir. 2010) ....................................................24, 25, 27

*In re Alton*,
  837 F.2d 457 (11th Cir. 1988) (per curiam) ................................................*passim*

*Anwar v. Johnson*,
  720 F.3d 1183 (9th Cir. 2013) ...............................................................29

*Automotive Alignment & Body Service, Inc. v. State Farm Mut. Auto.*
  *Ins. Co.*,
  953 F.3d 707 (2020)...........................................................................20

*In re Benedict*,
  90 F.3d 50 (2d Cir. 1996) ....................................................................21, 23, 26

*Bowles v. Russell*,
  551 U.S. 205 (2007)............................................................................25

*In re Bryan*,
  448 B.R. 866 (Bankr. M.D. Ga. 2011) ............................................................29

*Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*,
  290 B.R. 792 (B.A.P. 10th Cir. 2003) ............................................................36

*Choi v. Promax*,
  486 B.R. 541 (N.D. Ga. 2012)........................................................................27

*Cohen v. de la Cruz*,
  523 U.S. 213 (1998)...........................................................................16

*Coston v. Bank of Malvern*,
  987 F.2d 1096 (5th Cir. 1992) ...................................................................37

*In re Donnan*,
   465 B.R. 340 (Bankr. M.D. Ga. 2012) ............................................................29

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
   246 F. Supp. 3d 680 (E.D.N.Y. 2017) .......................................................32, 37

*In re Dunlap*,
   217 F.3d 311 (5th Cir. 2000) ................................................................20, 21, 37

*Farouki v. Emirates Bank Int'l, Ltd.*,
   14 F.3d 244 (4th Cir. 1994) .................................................................21, 23, 26

*Grogan v. Garner*,
   498 U.S. 279 (1991) ........................................................................................16

*In re Gully*,
   400 B.R. 529 (Bankr. N.D. Tex. 2009) ...........................................................36

*In re Hardin*,
   No. 18-70395, 2019 WL 2612752 (Bankr. N.D. Ga. June 24, 2019) ...............28

*Henry v. Comm'r of Soc. Sec.*,
    802 F.3d 1264 (11th Cir. 2015) .......................................................................28

*Holland v. Florida*,
   560 U.S. 631 (2010) ........................................................................................26

*Husky Intern. Elecs., Inc. v. Ritz*,
   136 S. Ct. 1581 (2016) ....................................................................................17

*In re Jones*,
   492 F.3d 242 (5th Cir. 2007) .....................................................................35, 36

*Klapprott v. United States*,
   335 U.S. 601 (1949) ........................................................................................33

*Kontrick v. Ryan*,
   540 U.S. 443 (2004) ................................................................................*passim*

*In re Kontrick*,
   295 F.3d 724 (7th Cir. 2002), *aff'd Kontrick v. Ryan*, 540 U.S. 443
   (2004) ..................................................................................................21, 26, 27

*In re Maughan*,
   340 F.3d 337 (6th Cir. 2003) .........................................................21, 26

*In re Mendenhall*,
   572 F.App'x 858 (11th Cir. 2014) ....................................................28

*In re Moseley*,
   470 B.R. 223 .............................................................................4

*Mullane v. Central Hanover Bank & Trust*,
   339 U.S. 306 (1950).........................................................19, 34, 35

*Neal v. Clark*,
   95 U.S. 704 (1878)..........................................................................17

*Neeley v. Murchison*,
   815 F.2d 345 (5th Cir. 1987) ........................................................20, 23

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993)...............................................................32, 33, 37

*In re Robbins*,
   2007 WL 1174334 (Bankr. E.D. Tenn. Apr. 19, 2007).....................................36

*In re Rychalsky*,
   318 B.R. 61 (Bankr. D. Del. 2004) ................................................25

*In re Smith*,
   379 B.R. 315 (Bankr. N.D. Ill. 2007) ..........................................34, 35

*In re Thomas*,
   883 F.2d 991 (11th Cir. 1989) ........................................................12

*United States v. Locke*,
   471 U.S. 84 (1985)..........................................................................26, 29

*In re Vann*,
   67 F.3d 277 (11th Cir. 1995) ........................................................12

*In re Vercher*,
   No. 12-17176, 2013 WL 3782937 (Bankr. M.D. Fla. July 18,
   2013) ...........................................................................25, 26

*In re Weinraub*,
    351 B.R. 779 (Bankr. S.D. Fla. 2006) ...............................................33

*In re Withrow*,
    570 B.R. 452 (Bankr. N.D. Ga. 2017) .............................................28

**Statutes**

11 U.S.C. § 341(a) ............................................................................18

11 U.S.C. § 503(a)(3)(B) ...................................................................15

11 U.S.C. § 523(a) .............................................................30, 34, 35, 37

11 U.S.C. § 523(a)(2) ........................................................................17

11 U.S.C. § 523(a)(2)(A) ....................................................12, 16, 17, 36

11 U.S.C. § 523(a)(3)(B) ...................................................18, 19, 30, 36

11 U.S.C. § 523(c) .........................................................................*passim*

11 U.S.C. § 523(c)(1) ........................................................................17

11 U.S.C. §§ 727(a)(2)-(5) .................................................................21

28 U.S.C. § 157(b)(2) ..........................................................................1

28 U.S.C. § 158(d) ...............................................................................1

28 U.S.C. § 1334 ..................................................................................1

**Other Authorities**

11th Cir. R. 28-1(g) ..............................................................................1

Fed. R. Bankr. P. Rule 523(c) ............................................................18

Fed. R. Bankr. P. 4004 ...................................................................*passim*

Fed. R. Bankr. P. 4004(a) ...............................................................*passim*

Fed. R. Bankr. P. 4004(b) ..................................................................22

Fed. R. Bankr. P. 4007 ...................................................................*passim*

Fed. R. Bankr. P. 4007(c) ...................................................................*passim*

Fed. R. Bankr. P. 4407(c) ...................................................................25

Fed. R. Bankr. P. 8006(f)(1) ...............................................................1

Fed. R. Bankr. P. 9006(b) ...................................................................18, 22

Fed. R. Bankr. P. 9006(b)(3)................................................................22

Fed. R. Bankr. P. 9011 .......................................................................32

U.S. Const. art. III, § 1 ......................................................................20

## <u>11th Cir. R. 28-1(g) Statement of Subject-Matter and Appellate Jurisdiction</u>

The U.S. Bankruptcy Court for the Southern District of Florida had subject-matter jurisdiction under 28 U.S.C. § 1334. TL moved for leave to file a complaint seeking a dischargeability determination under 11 U.S.C. § 523(c). This matter is a core proceeding in the Bankruptcy Court under 28 U.S.C. § 157(b)(2).

This Court has appellate jurisdiction over this direct appeal by permission from the Bankruptcy Court under 28 U.S.C. § 158(d). The Bankruptcy Court entered the final order under review on October 13, 2020, denying in paragraph 2 of that order TL's motion for leave to file a Section 523(c) complaint. ECF No. 514 at 2. On October 26, 2020, TL filed a timely amended notice of appeal from the Bankruptcy Court's October 13, 2020 order. ECF No. 526 at 2. On November 17, 2020, TL filed a timely motion under Bankruptcy Rule 8006(f)(1) to certify the October 13, 2020 order for direct appeal to this Court. ECF No. 550. On December 17, 2020, the Bankruptcy Court granted TL's motion to certify (ECF No. 575) and on December 18, 2020, certified its order for direct appeal (ECF No. 576). On January 18, 2021, TL filed a timely motion for leave to appeal to this Court, which the clerk docketed on January 19, 2021. The Court granted leave to appeal on February 12, 2021.

## Statement of the Issue Presented for Review

Did the Bankruptcy Court err in concluding in paragraph 2 of its October 13, 2020 order (ECF No. 514 at 2) that TL was not entitled to an extension of the deadline under Bankruptcy Rule 4007 to file a complaint under Section 523(c) because as a matter of law neither principles of equitable tolling nor the Due process Clause of the federal constitution permitted an extension?

## Statement of the Case

### A.    Course of Proceedings and Disposition in the Bankruptcy Court.

Debtor Joseph L. Ford III ("Debtor" or "Ford") filed his Chapter 7 bankruptcy on January 9, 2019. ECF No. 467 at 3. TL was not listed as a creditor in Ford's bankruptcy. ECF. No. 467 at 4. As of the April 9, 2019 claims bar date, TL had not asserted any claim against Ford in their pending Wisconsin lawsuit or Ford's bankruptcy and, as the Bankruptcy Court held, it is uncontested that TL had no reasonable basis to assert any claim against Ford at that time. ECF No. 518 at 25:20-22; 26:6-16.

On September 17, 2020, prior to confirmation of Debtor's Chapter 11 Plan, TL made three filings[1]:

(1) a conditional objection to Ford's plan to the extent that plan confirmation

---

[1] Prior to TL's filings in September 2020, TL's only involvement in the bankruptcy proceeding was to seek relief from the automatic stay so Ford's lawsuit *against* TL in Wisconsin could proceed. *See, e.g.,* ECF No. 59.

would in any way limit TL's ability to pursue its claim against Ford for conspiracy to defraud or would in any way limit TL's ability to interpose set-offs against Ford's potential recovery against TL in then-pending litigation in Wisconsin initiated by Ford against TL (ECF No. 465);

(2) a motion for relief from stay, to permit TL to assert against Ford in the Wisconsin litigation a counterclaim for conspiracy to defraud TL based on newly discovered evidence (ECF No. 466); and

(3) a motion for leave to file a late proof of claim and to extend the deadline to file a complaint seeking a dischargeability determination under 11 U.S.C. § 523(c) (ECF No. 467).

Following an agreement between Ford and TL that carved out TL's potential claims against Ford from Ford's Chapter 11 Plan, the Bankruptcy Court on September 23, 2020 entered an agreed order resolving TL's conditional objection (ECF No. 465). ECF No. 492.[2]

---

[2] The carve-out was later included in the final Chapter 11 confirmation order. ECF No.584 at 6-7, 9-11. Following the September 23, 2020 agreed order, Ford has repeatedly sought to undermine the carve-out's effect, both in the Wisconsin litigation and in the Bankruptcy Court, underscoring the significance of the issue presented here. Most recently, the Bankruptcy Court granted TL's motion to enforce compliance with its orders (all of which had become final and none of which Ford appealed) and sanctioned Ford and his Wisconsin counsel for making filings in Wisconsin that were "false" (ECF No. 602 at 8), "untrue" (*id.*); without "reasonable basis" (*id.*); "directly contrary to several orders" of the Bankruptcy Court (*id.* at 9); and made in "bad faith" (*id.* at 9, 10), because Ford contended that confirmation in December 2020 of his Chapter 11 Plan affected TL's ability to pursue its claims

Following full briefing by the parties on TL's motions for relief from stay and for enlargement of time to file a proof of claim and a complaint under Section 523(c) (Docs. 470, 472, 485, 509, 510), the Bankruptcy Court on October 8, 2020 held a hearing on TL's motions. The hearing was transcribed. ECF No.518 (10/08/20 Tr.). At the conclusion of the hearing, the Bankruptcy Court indicated that it would grant TL's motion for relief from the automatic stay, grant TL's motion for an enlargement of time to file a proof of claim (and directed that the proof of claim be filed within 14 days of the Bankruptcy Court's written order on TL's motion), and deny TL's motion for an enlargement of time to file a complaint under Section 523(c). *See id.* at 21:10-32:4.

In granting TL's motion for an enlargement of time to file a proof of claim, the Bankruptcy Court held that TL's filing of its claim after the claim deadline was entirely outside its control, in good faith, and in no way prejudicial to the debtor. Specifically, the Bankruptcy Court addressed several factors before concluding that TL not filing a proof of claim by the initial deadline in 2019 was "based on excusable neglect." ECF No.518, 10/08/20 Tr. 23:24-27:8. First, the Bankruptcy Court concluded that there would be no prejudice to Ford, explaining that he had "yet to confirm a Chapter 11 . . . plan in this case" and TL "does not seek a distribution"

---

against Ford in Wisconsin, when confirmation of Ford's plan had no affect at all on TL's ability to fully liquidate its claims against Ford. *See also* ECF No. 588 (order clarifying order granting relief from stay).

3

from the plan, but instead seeks other relief. *Id.* 24:7-22. Second, the "length of the delay" was "not material" because "Mr. Ford has yet to present a confirmable plan." *Id.* 25:4-10. Third, TL's filing a proof of claim after the claims deadline was "not in its reasonable control" because it had not previously had reason to believe that it had a claim against Ford; TL's claim arose from newly disclosed evidence in discovery in the Wisconsin litigation. *Id.* 25:11-26:12. Finally, the Bankruptcy Court concluded that "TL's good faith is apparent" and there was "nothing before the Court that would cause the Court to question TL's good faith in attempting to present a proof of claim in this case." *Id.* 26:13-20.

In denying TL's motion for an enlargement of time to file a complaint under Section 523(c), though, the Bankruptcy Court held that this Court's precedent barred it from extending the Rule 4007(c) deadline for a determination of dischargeability, including based on grounds of equitable tolling. *Id.* 29:16-18 ("binding precedent in this Circuit does not permit the Court to grant the extension requested by TL"); *id.* at 30:12-16 (the Eleventh Circuit's decision in "*Alton* stands for the proposition that this Court has no discretion to extend the deadline under Rule 4007 after that deadline has passed, and that consequently, equitable tolling does not apply"); *id.* at 30:17-19 (agreeing with Judge Williamson's decision in *In re Moseley*, 470 B.R. 223, that the United States Supreme Court's decision in "*[K]ontrick* . . . did not overrule *Alton*").

In reaching its conclusion, the Bankruptcy Court noted the split of authority and the unjustness of barring a creditor who, through no fault of its own, had no factual or legal basis to assert a timely complaint for a dischargeability determination simply because a debtor had given notice of his bankruptcy before the deadline for seeking that determination. "Do I think this is the just outcome in this particular case[?]. I suspect that it is not. But unlike some other Courts, I do not believe it is appropriate for this Court to second guess the 11th Circuit. If the parties would like a change in the law, they likely will need to pursue that argument with the Court of Appeals." ECF No.518, 10/08/20 Tr. 31:2-8.[3]

As a result of the Bankruptcy Court's rulings, TL was permitted to file a proof of claim on or before October 27, 2020, which if allowed, would, at a minimum, give TL "a right of setoff against Mr. Ford's claims in the Wisconsin litigation under Section 553." *Id.* 27:13-16.[4]

A few days after the October 8, 2020 hearing, the Bankruptcy Court entered written orders setting forth its rulings (1) granting relief from stay (ECF No. 513);

---

[3] During the February 24, 2021 hearing on TL's motion to enforce compliance with the Bankruptcy Court's orders, the Bankruptcy Court stated in respect to the appeal pending before this Court, "[i]t could be that the 11th Circuit will rule that I'm wrong. In fact, I think the correct answer is that I'm wrong, but I don't get to say that, only the 11th Circuit can say that." ECF No. 605 (02/24/21 Tr. at 9:4-7).

[4] TL timely filed its proof of claim. *See* Claim 4. Ford objected to the claim, but the Bankruptcy Court abated the objection pending resolution of the Wisconsin proceedings. ECF No.583.

(2) permitting TL to file a proof of claim (ECF No. 514, ¶ 1); and (3) denying TL's motion to file a complaint seeking a dischargeability determination under Section 523(c) (ECF No. 514, ¶ 2).

This appeal arises from the last of these orders. As noted, the Bankruptcy Court denied TL's motion to file a Section 523(c) complaint because it believed that it lacked the power under this Court's precedent to grant TL an extension of the Rule 4007(c) deadline, on either equitable or due process grounds. ECF Nos. 514, 518. TL timely appealed this final order (ECF No. 526) and timely sought certification (ECF No. 550). The Bankruptcy Court certified its order. ECF No. 576.

**B.    Statement of Facts.**

In February 2017, just under two years before filing for bankruptcy in the Southern District of Florida, Debtor Joseph L. Ford, III ("Ford") and his co-plaintiff Richard Mueller sued TL for replevin in state court in Wisconsin, seeking replevin of a rare automobile (a 1938 Talbot Lago), which TL had purchased for more than $7 million (including transactions costs) in 2015 from Christopher Gardner, in Switzerland. ECF No. 466 at 1; ECF No. 467 at 3-4. Ford and Mueller contended that the vehicle had been stolen in 2001 from Mueller's predecessor-in-interest. ECF No. 466 at 1. Ford contended that he had acquired an 80% interest in the vehicle from Mueller. *Id.* at 3.

TL moved to dismiss Ford and Mueller's Wisconsin complaint on statute of

repose grounds; the trial court granted the motion. *Id.* at 3. The Wisconsin Court of Appeals reversed. *Id.*

On January 15, 2019, the Wisconsin Supreme Court granted TL's petition for discretionary review of the Wisconsin Court of Appeals' decision. *Id*. On February 18, 2019, Ford filed a notice with the Wisconsin Supreme Court that he had on January 9, 2019 filed for bankruptcy. *Id.* Ford did not list TL as a creditor in his bankruptcy or provide TL with formal notice of the creditor's meeting or the claims bar date. ECF No. 467 at 4, citing ECF No. 10. On March 1, 2019, the Wisconsin Supreme Court stayed the appeal due to Ford's bankruptcy filing pending guidance from the U.S. Trustee. *Id*. at 5.

At the time of April 9, 2019 claims bar date, the Wisconsin litigation was stayed. Further, at the time of the claims bar date, TL had no reasonable basis to assert any claim against Ford, including specifically no factual basis to assert that Ford had conspired with Gardner, the seller of the vehicle to TL, to profit from the allegedly stolen vehicle. More specifically, TL lacked any evidence showing (1) that Ford knew that the car was allegedly stolen at the time that Ford and Gardner (the alleged car thief) were working together; (2) that Ford had advised Gardner on how to misleadingly document his unlawful acquisition of the vehicle; and (3) photographic evidence showing Ford's presence with the vehicle during its

restoration in Europe before Gardner sold the vehicle to TL. *Id*.[5] Since TL had no

knowledge of any basis to assert a fraud claim, TL naturally also had no basis to file

a complaint regarding dischargeability.

Following the Wisconsin Supreme Court's request for guidance from the U.S.

Trustee, TL moved the Bankruptcy Court to grant relief from stay, to the extent that

the stay applied at all to Ford's claims against TL. *Id*. at 5, citing ECF No. 59. On

May 2, 2019, after the claims bar date, Ford objected to TL's motion for relief from

stay on the grounds that "[i]f the [Wisconsin] Supreme Court affirms . . ., the case

can proceed on its merits and at that time [TL] would have the option of filing a

counterclaim against the Debtor." *Id.,* quoting ECF No. 64 at ¶ 5. Ford stated that he

would be willing to reconsider his objection to TL's request for relief from the stay

"if TL unequivocally waives any potential counterclaims" that it might have against

Ford on remand. *Id.* at 5-6, quoting ECF No. 64 at ¶ 7.

On May 13, 2020, TL filed its reply in support of its motion for relief from

---

[5] *See also* ECF No. 518 at 26:8-12 (Bankruptcy Court's finding that, "[b]ased on the circumstances there was no reason for TL to depose or seek documents from Mr. Ford in this bankruptcy case, and so the delay in TL's discovering that it may have a claim against Mr. Ford was not within its control"); *id.* at 26:13-16 (Bankruptcy Court's finding that, "[c]ontrary to Mr. Ford's argument, there is nothing before the Court that would cause the Court to question TL's good faith in attempting to present a proof of claim in this case"); ECF No. 514 at 1-2 (granting TL leave to file a proof of claim for the reasons stated on the record). Mr. Ford did not appeal any of the substantive orders granting relief to TL, including the Bankruptcy Court's specific findings. The time for appeal passed months ago.

stay. *Id.* at 6, citing ECF No.69. TL noted that it had filed no counterclaim (the case had been dismissed on statute of repose grounds before discovery) and that the mere theoretical possibility of a future counterclaim was no basis to stay the Wisconsin proceedings brought by Ford.[6] ECF No.69 at 2-3. On May 17, 2019, having reviewed the reply, but offering no explanation for his initial objection, Ford withdrew his objection; the Bankruptcy Court then granted relief from the stay. ECF No. 467 at 6, citing ECF Nos. 76, 82.

Subsequently, the Wisconsin Supreme Court proceeded with the case, issuing a decision in February 2020 disagreeing with TL's statute of repose defense. *Id.* The Court's remittitur to the trial court issued in early April 2020. *Id.,* citing Wisconsin Case 2017-cv-000867, ECF No.108. Motion practice and discovery then ensued on remand. *Id*.

On June 23, 2020, upon TL's motion, the Wisconsin court issued a commission for an out-of-state subpoena to Zachary Gottesman, counsel who formerly represented the alleged thief Gardner in litigation with Ford in Ohio. ECF No. 467 at 6-7. In early July 2020, TL received a production of documents from Gottesman that contained, among other information, the following documents

---

[6] As noted (supra n.5), the Bankruptcy Court in its October 13, 2020 order (incorporating its findings on the record during the October 8, 2020 hearing) specifically found that TL had no reason to seek discovery from Mr. Ford in 2019 in his bankruptcy and no reason to present a claim before 2020.

critical to TL's discovery of a claim against Ford for conspiracy to defraud:

(A) a photo showing Ford in the presence of the vehicle during its restoration in Europe (shortly after TL produced the photo to Ford after receiving it from Gottesman, Ford's counsel admitted that it was authentic, though Ford himself had withheld the photo from his document production) (*id.*);

(B) direct email correspondence between Ford and the alleged thief Gardner showing Ford's review of Gardner's purchase records of the vehicle from Mueller (Ford's later Wisconsin co-plaintiff), and Ford's advice to Gardner that "Fuzzy is good" as to what Gardner had allegedly purchased from Mueller (*id.*); and

(C) Ford's specific reference to a rare book regarding the very vehicle at issue, which reported on the alleged theft, thereby evidencing Ford's knowledge of the alleged theft during the time period when he worked with Gardner and when they both sought to profit from vehicle (*id.*).

Also in July 2020, TL learned through repeated meet and confers with Ford's Wisconsin counsel that Ford was withholding from his document production additional correspondence with the alleged thief Gardner, including specifically several photographs that Ford took while examining the vehicle in Europe, showing Ford's direct involvement with the vehicle. *Id.* at 7. TL had none of this evidence as of the claims bar date. *Id.* On September 1, 2020, the Wisconsin court granted TL's

motion to compel production of the photographs, holding that Ford lacked any legal basis to withhold them. *Id*.

On the basis of this newly discovered evidence, TL, contemporaneously with its September 17, 2020 motions in the Bankruptcy Court, filed in the Wisconsin litigation a Motion for Leave to Amend its Answer to assert a counterclaim for conspiracy to defraud against Ford. *Id.*

After further motion practice in Wisconsin, TL filed a revised counterclaim for conspiracy to defraud against Ford, adding additional factual detail. ECF No. 593-1 (reply, which incorporates the counterclaim's allegations). The Counterclaim alleges that Ford knew that the vehicle for which he seeks replevin and damages from TL was allegedly stolen, but that he nonetheless conspired with the alleged thief Gardner to seek to profit from the Vehicle and, ultimately, that Ford's co-conspirator Gardner allegedly defrauded TL in the sale of the Vehicle, an act in furtherance of the conspiracy. ECF No. 593-1 at 5-15. Ford replied to the revised counterclaim on January 19, 2021. *Id.*

Despite Ford's express agreement that confirmation of his bankruptcy plan in no way abridged TL's counterclaim, Ford attempted to interpose a defense to the counterclaim asserting that "TL's claim and/or any collection of any related judgment may be barred in whole or in part by the confirmation of Mr. Ford's plan for Chapter 11." *Id.* at 18. Because this affirmative defense violated prior

11

Bankruptcy Court orders, TL on February 5, 2021 filed a motion to enforce compliance with those orders and for sanctions. ECF Nos. 593; 593-1 at 18. After full briefing and a hearing, the Bankruptcy Court granted TL's motion to enforce and sanctioned Ford and his Wisconsin counsel for their false statements and bad faith attempts to interfere with TL's pursuit of its counterclaims against Ford in Wisconsin. ECF No. 602 at 8-10.

### C.    Statement of the Standard of Review.

The issue on appeal presents a pure question of law: whether the Rule 4007(c) deadline for filing a complaint seeking a dischargeability determination under Section 523(c) is jurisdictional (and so may not be extended for any reason) or whether federal courts are permitted on equitable or due process grounds to extend the Rule 4007 deadline. While the Bankruptcy Court believed that it was constrained by this Court's precedent in concluding that federal courts have no discretion to extend the Rule 4007 deadline, it also did not believe that this was a just result. This Court's review is de novo. *In re Vann*, 67 F.3d 277, 280 (11th Cir. 1995) ("We review the bankruptcy court's construction of section 523(a)(2)(A) de novo."); *In re Thomas*, 883 F.2d 991, 994 (11th Cir. 1989) (Legal conclusions of the lower courts are subject to "complete review by this court.").

### Summary of the Argument

More than 30 years ago, this Court held in *In re Alton*, 837 F.2d 457, 459 (11th

Cir. 1988) (per curiam), that equitable tolling is unavailable for a party seeking an extension of the Rule 4007 deadline. In so ruling, the Court concluded that the provisions of Rule 4007 "are mandatory and do not allow the Court any discretion to grant a *late filed* motion to extend the time to file a dischargeability complaint." *Id.* (emphasis by the Court; internal citation, quotation omitted). Separately, the Court in *Alton* recognized that due process could provide a basis for granting relief from the Rule 4007(c) deadline, but that the creditor in that case had not established a due process violation. *Id.* at 460-61 & n.4.

Sixteen years after *Alton*, the United States Supreme Court in *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) held that Rule 4004 (a closely related and parallel provision to Rule 4007) was not jurisdictional — "[o]nly Congress may determine a lower federal court's subject matter jurisdiction." Specifically, *Kontrick* considered whether debtor's failure to interpose Rule 4004(a) as a defense to a creditor's claim was waivable. If Rule 4004(a) was *jurisdictional* — that is, if the Bankruptcy Court lacked subject matter jurisdiction to consider a claim filed after the Rule 4004(a) deadline expired — then, the debtor could have raised Rule 4004(a) at any time in the case (including on appeal). If, in contrast, Rule 4004(a) was a claims-processing time period for asserting a complaint objecting to the debtor's discharge, then the *debtor* could forfeit the benefit of the rule by interposing it too late. The Court held that Rule 4004(a) was a claims-processing rule and that because the debtor waited

13

until after the Bankruptcy Court had granted summary judgment to the creditor to interpose the rule as a defense to the creditor's claim, the debtor had forfeited the rule.

*Kontrick* expressly acknowledged and did not resolve the split of authority concerning whether the federal courts could equitably toll Rule 4004(a) and, specifically, the parallel and related, Rule 4007(c), at issue here. *Id.* at 457 & n.11.

Other Courts of Appeal and lower courts (including within this Circuit) have concluded that courts may apply equitable tolling to the time limits in Rule 4007, reasoning that because the rule is not jurisdictional, it, like other non-jurisdictional rules, is subject to equitable exceptions.

Because the foundational basis for *Alton*'s holding that equitable tolling is not available for Rule 4007(c) is no longer solid in light of *Kontrick* and because the result of categorically denying a creditor equitable tolling (or a due process exception) is unjust, TL urges the Court to join those courts that have held that federal courts have the power to grant exceptions to Rule 4007 on equitable grounds. Additionally, while the Bankruptcy Court believed that *Alton* constrained it from applying either equitable tolling *or* a due process exception, TL urges this Court to re-affirm *Alton*'s implicit holding that due process has been and remains available as an exception to Rule 4007.

With equitable tolling available and with the due process exception re-affirmed, TL requests that the Court remand this case to the Bankruptcy Court to determine in the first instance whether TL's notice of Ford's *bankruptcy* before TL had any basis to assert a Section 523(c) complaint (or any fraud claim at all) forever bars TL from filing that complaint, even though the undisputed evidence in the record is that TL had no basis to know or reason to seek out information supporting a fraud claim against Ford before the Section 523(c) bar date in April 2019. Indeed, the evidence TL received more than one year later shows that Ford conspired with the alleged thief of the vehicle to profit from the theft and then, after the object of the conspiracy was completed (with the alleged thief's sale of the vehicle to TL), to sue TL to obtain possession of the very vehicle that was the object of his conspiracy by partnering with the alleged successor to the victim of the reported theft.

That this has been Ford's object all along is now plain from the record — Ford requested a stay of his own lawsuit against TL in Wisconsin, even though no claims were asserted against him at that time (and even though TL had no reasonable basis for asserting a claim against him at that time), merely to provide TL notice of his bankruptcy as a way around 11 U.S.C. § 503(a)(3)(B)'s notice exception and to later invoke Rule 4007(c) and *Alton*. Ford even proposed in 2019 that he would be fine with granting TL relief from stay to litigate its appeal against Ford's affirmative claim in the Wisconsin Supreme Court, provided TL prospectively (and before any

discovery had occurred) waived any "potential counterclaim" it might have against Ford. Ford then, without explanation, withdrew his opposition to the relief from stay allowing the Wisconsin lawsuit to proceed once the claims bar date had passed. When TL on remand learned of the basis for a counterclaim (evidence it did not have previously and which Ford himself had withheld), Ford interposed Rule 4007(c) as an absolute bar and even sought (repeatedly) to also use his Chapter 11 plan confirmation as a bar despite his express agreement to the contrary, resulting in sanctions for his "untrue" statements that plan confirmation affected TL's counterclaims. ECF No. 602. Ford's conduct is emblematic of why, following *Kontrick*'s rejection of the theory that the Bankruptcy Rules impose "jurisdictional" bars, Bankruptcy Courts should have the discretion to permit exceptions to Rule 4007 on equitable grounds and should continue to have the discretion to permit exceptions on due process grounds under these extreme circumstances.

## Argument

### I.    Rule 4007 Is Subject to Equitable and Due Process Exceptions.

#### A.    Legal Standards.

"The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Section 523(a)(2)(A) provides that a discharge under the Code does not

16

discharge an individual debtor from any debt for money obtained by "actual fraud." 11 U.S.C. § 523(a)(2)(A). The "actual fraud" encompassed within section 523(a)(2)(A) is broad. *See Husky Intern. Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016) ("actual fraud" includes "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation;" "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud'"); *id.* at 1586 ("'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involv[es] moral turpitude or intentional wrong;'" (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)) (brackets by the Court).

Notwithstanding the protections provided to creditors who are the victims of a debtor's fraud, Section 523(a)(2) is subject to several limitations, four of which bear on this appeal.

*First*, even fraudulent, pre-petition conduct is subject to discharge, "unless on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section." 11 U.S.C. § 523(c)(1).

*Second*, Section 523(c) itself embeds an exception that limits its applicability to the circumstance of a creditor having "notice or actual knowledge of the case in time for" the "timely filing and request" for "a determination of dischargeability."

17

11 U.S.C. § 523(a)(3)(B).

*Third*, in a Chapter 11 reorganization such as Ford's (along with other reorganizations not relevant here), Bankruptcy Rule 4007(c) provides that a Section 523(c) complaint "shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)" ("the claims bar date"). Further, while Rule 4007(c) vests the Bankruptcy court with discretion "for cause" to "extend the time fixed under this subsection," the motion seeking the extension "shall be filed before the time has expired." *Id*.

*Fourth*, Bankruptcy Rule 9006(b), which governs discretionary extensions of time, provides that "[t]he court may enlarge the time for taking action under Rule[] . . . 4007(c) . . . only to the extent and under the conditions stated in [that] rule[s]."

Collectively, these provisions require a creditor to file a Rule 523(c) complaint within 60 days of the first date set for the creditor's meeting, provided that the creditor has actual knowledge of the case, unless the creditor seeks an extension of time before the initial deadline expires.

Here, Ford contends that because TL had notice *of his bankruptcy* TL could not invoke Section 523(a)(3)(B), but was instead required to file a Rule 523(c) complaint by the Rule 4007(c) deadline (which expired in 2019), even though TL lacked any basis to assert a claim or a Rule 523(c) complaint until after it received

18

third-party discovery in the Wisconsin litigation in 2020 and even though Ford himself concealed evidence of his own misconduct.

### B.    *Alton* Rested on the Premise that Rule 4007(c) is Jurisdictional.

In *Alton*, this Court held that the Rule 4007(c) deadline to file a dischargeability complaint is "mandatory" and that courts lack "any discretion" to grant a late filed motion to extend that time on equitable tolling grounds. *See* 837 F.2d at 459. The Court's language in *Alton* is jurisdictional in nature.

Specifically, the Court noted that "[u]nder Rule 4007(c), any motion to extend the time period for filing a dischargeability complaint must be made *before* the running of that period." *Id.* (emphasis by the Court, footnote omitted). It stated that "[t]he dictates of the Code and Rules are clear. It is not our place to change them." *Id.* And, noting the Section 523(a)(3)(B) exception, the Court stated that "[t]he statutory language clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates." *Id.* at 460.

Independently, *Alton* acknowledged that due process could in certain circumstances require an exception to the Rule 4007(c) deadline. *Id.* at 460-61 & n.4, *citing Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950). But the Court held that there was no due process violation because the creditor in that

case both "received actual written notice of the case" and that notice came "[a]t a time when he could have protected himself," either by filing a Section 523(c) complaint before the original deadline passed or by seeking an extension under Rule 4007(c). *Id.* at 460-61.

To TL's knowledge, the Court has not revisited *Alton*'s equitable tolling holding in a published disposition post-*Kontrick*. In 2020 though, the Court acknowledged that the Supreme Court has more recently "held that other time limits in court-made procedural rules are nonjurisdictional claim-processing rules." *Automotive Alignment & Body Service, Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 722-23 (2020) (citing, inter alia, *Kontrick*, 540 U.S. at 446-47). The Court noted that "[t]hese recent decisions rest on the principle that '[o]nly Congress may determine a lower federal court's subject matter jurisdiction.'" *Id.* at 723 (quoting *Kontrick*, 540 U.S. at 452 (in turn citing U.S. Const. art. III, § 1); second brackets by the Court).

At least one other Court of Appeals has, pre-*Kontrick*, held that Rule 4007(c) is not subject to equitable tolling. *See In re Dunlap*, 217 F.3d 311, 315 (5th Cir. 2000) (citing *Neeley v. Murchison*, 815 F.2d 345, 346 (5th Cir. 1987)). But while the Fifth Circuit did not apply equitable tolling in *Dunlap*, neither did it endorse a rule that would categorically bar late claims. Instead, the Court *extended* a Rule 4007 deadline that had lapsed during the period of time that a case had been dismissed and

before it had been refiled and in so doing *allowed* the Section 523(c) complaint to proceed (a species of due process exception discussed below). *Dunlap,* 217 F.3d at 315.

The Second, Fourth, Sixth, and Seventh Circuits pre-*Kontrick* all held that the time limit under Rule 4007 is not jurisdictional and accordingly subject to equitable exceptions. *See In re Benedict,* 90 F.3d 50, 53-54 (2d Cir. 1996); *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 248 (4th Cir. 1994) (Rule 4004(a)); *In re Maughan*, 340 F.3d 337, 344 (6th Cir. 2003) (Rule 4007(c)); *In re Kontrick*, 295 F.3d 724, 734 (7th Cir. 2002), *aff'd Kontrick v. Ryan*, 540 U.S. 443 (2004).

### C.    *Kontrick* **Eliminated the Jurisdictional Underpinning of** *Alton*

In ruling that Bankruptcy Rule 4004's deadline was not jurisdictional, the Supreme Court in *Kontrick* undermined *Alton's* conclusion that courts lacked the authority to adjust deadlines on equitable and due process grounds.  The issue before the Supreme Court in *Kontrick* was whether the protection for a debtor afforded by the deadline under Bankruptcy Rule 4004 (a rule similar to Rule 4007) could be forfeited. 540 U.S. at 447.

The circumstances were these: a creditor (Ryan) filed an amended complaint in bankruptcy against the debtor (Kontrick), raising a new fraudulent conveyance theory under 11 U.S.C. §§ 727(a)(2)-(5), "but without seeking or gaining a court-approved time extension" before doing so. *Id*. at 449. When Kontrick answered the

amended complaint, he failed to raise the untimeliness of the new claim. *Id*. After discovery and cross-motions for summary judgment, the Bankruptcy Court granted summary judgment in favor of Ryan on his new fraudulent conveyance theory. *Id*. at 450-51.

Kontrick then sought reconsideration, contending that the Bankruptcy Court lacked jurisdiction over the new fraudulent conveyance theory on which it had granted summary judgment. *Id*. at 451. According to Kontrick, the court "was powerless to adjudicate the claim . . . because the amended complaint containing the claim was untimely" under Rules 4004(a) and (b) and 9006(b). *Id*. The bankruptcy court, the district court, and the Seventh Circuit rejected Kontrick's contention that Rule 4004(a) was jurisdictional. *Id*. at 451-52. The Supreme Court affirmed, concluding that Rule 4004(a) was not jurisdictional. *Id.* at 452.

Specifically, Kontrick argued in the Supreme Court that while Rule 4004 and 9006(b)(3) "are not properly labeled 'jurisdictional' in the sense of describing a court's subject-matter jurisdiction," nonetheless these rules assertedly had "the same import as provisions governing subject-matter jurisdiction." *Id*. at 455. And since a litigant "generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance," it followed according to Kontrick that "a debtor may challenge a creditor's objection to discharge as untimely under Rule 4004 and 9006(b)(3) at any time in the

22

proceedings, even initially on appeal or certiorari." *Id*. at 455 (internal citations omitted).

> The Supreme Court unanimously rejected this theory:

> The equation Kontrick advances overlooks a critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule. Characteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point.

*Id*. at 456. Because the Court held that Rule 4004 was not jurisdictional, Kontrick needed to raise the rule in a timely manner. And because Kontrick did not invoke the rule until after the Bankruptcy Court had granted summary judgment, the Court held that he forfeited his ability to rely on the rule as a defense. *Id*. at 457-58.

The Court expressly left open the equitable tolling question presented here — "[w]hether the Rules, despite their strict limitations, could be softened on equitable grounds" — because the case did not turn on whether equitable exceptions might apply. *Id*. at 457 & n.11 (citing the Seventh Circuit's decision in *Kontrick*, the Second Circuit's decision in *Benedict*, and the Fourth Circuit's decision in *Farouki* as allowing equitable exceptions and this Court's decision in *Alton* and the Fifth Circuit's decision in *Neeley* as precluding equitable exceptions).[7]

---

[7] Of note, because the *debtor* in *Kontrick* sought to avoid the effect of his own forfeiture by arguing that Rule 4004 was jurisdictional (and since subject-matter jurisdiction cannot be conferred by waiver, agreement, mistake, or estoppel, he could

**D.**    **The Court Should Rescind *Alton*'s No Equitable Tolling Rule.**

While the Supreme Court left the availability of equitable exceptions open in *Kontrick*, this Court's rationale for denying an equitable exception in *Alton* is the very one rejected by the Supreme Court in *Kontrick*: that the Bankruptcy rules circumscribe the Bankruptcy courts' jurisdiction, when in reality, the rules are mandatory claims-processing rules and only Congress delineates jurisdiction.

A rule that would deny any discretion to courts to equitably toll the Rule 4007(c) deadline to file a Section 523(c) complaint is accordingly inconsistent with *Kontrick*. In *Kontrick*, the Supreme Court made clear that the deadlines in Rule 4004 (and, by extension, the parallel Rule 4007) are "claim-processing rules" more akin to statutes of limitations and that a failure to meet the deadlines does not deprive a court of subject-matter jurisdiction. *See Kontrick*, 540 U.S. at 455, 459 (rejecting argument "that the Rules have the same import as provisions governing subject-matter jurisdiction").

Indeed, this Court has previously treated Rule 4007(c) as equivalent to a statute of limitations. In *Alabama Department of Economic & Community Affairs v. Lett*, 368 Fed. Apps. 975 (11th Cir. 2010), the Court, relying on *Kontrick*, held that a debtor had preserved a defense based on Rule 4007(c) "when he pleaded the statute

---

not have forfeited the rule), there was no issue in *Kontrick* concerning whether equitable tolling could relieve *a creditor* from the rule's effect, there was also no issue concerning whether due process would require that relief.

24

of limitations in his answer even though the answer contained no specific reference to Rule 4007(c)." Moreover, *Lett* did not suggest that equitable tolling of Rule 4007(c) was *un*available. The Court affirmed the lower court's rejection of the debtor's arguments *for* equitable relief from the Rule 4007(c) deadlines, but did not suggest that that equitable arguments were either unavailable or impermissible. *See id.* at 978-79 (concluding that "ADECA fails to show that the bankruptcy court abused its discretion by failing to toll the Rule 4407(c) limitations period based on equitable considerations").[8] Other courts post-*Kontrick* have concluded that *Alton*'s rejection of equitable tolling did not survive the logic of *Kontrick*'s holding. *See In re Rychalsky*, 318 B.R. 61, 63-64 (Bankr. D. Del. 2004) (concluding that *Alton* did not remain good law after *Kontrick* because the Supreme Court held that rules were not jurisdictional); *In re Vercher*, No. 12-17176, 2013 WL 3782937, at *4 (Bankr. M.D. Fla. July 18, 2013) (relying on *Kontrick* to conclude that "the deadline set forth in Rules 4004 and 4007 is not jurisdictional and is therefore subject to equitable considerations," despite *Alton*).

The distinction between subject-matter jurisdiction and a claims-processing rule akin to a statute of limitations is critical here, because while courts "[have] no authority to create equitable exceptions to jurisdictional requirements," *Bowles v.*

---

[8] *Lett* expressly left open the question of the availability of equitable tolling, just as *Kontrick* did. *Id.* at 979 n.4 ("Because no sufficient case has been made for equitable tolling, we need say nothing on this issue left open in *Kontrick*.").

*Russell*, 551 U.S. 205, 214 (2007), non-jurisdictional claim-processing requirements remain "subject to [a] rebuttable presumption in *favor* of equitable tolling." *Holland v. Florida*, 560 U.S. 631, 645-46 (2010) (emphasis by the Court; internal quotation marks omitted). It is therefore unsurprising that courts that have held the Rule 4004 or Rule 4007 deadlines are not jurisdictional have often also held those deadlines are open to equitable exceptions. *See, e.g.*, *Maughan*, 340 F.3d at 344; *Farouki*, 14 F.3d at 248; *Vercher*, 2013 WL 3782937, at *4; *Kontrick*, 295 F.3d at 731 (noting "the general principle that a filing deadline is subject to equitable defenses").

For example, in *Maughan*, the Sixth Circuit considered it wholly uncontroversial that *unless* there is a subject-matter jurisdiction defect, "the rule is a statute of limitation—or simply a deadline—that is generally subject to the defenses of waiver, estoppel, and equitable tolling." 340 F.3d at 333-34, citing *United States v. Locke*, 471 U.S. 84, 94 n. 10 (1985); *see also Locke*, 471 U.S. at 94 n.10 ("Statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling."). It is a simple dichotomy: equitable considerations can never excuse jurisdictional defects, but deadlines generally can be excused on equitable grounds. *See also Benedict*, 90 F.3d at 54-55 ("Rule 4007 is not jurisdictional and *thus* subject to waiver, estoppel, and equitable tolling"); *Kontrick*, 295 F.3d at 733 ("the timeliness provisions at issue here [including Rule 4004(a)] are not jurisdictional;" "[t]hese provisions are subject to equitable defenses").

26

In *Kontrick*, the Seventh Circuit underscored why equitable exceptions furthered, not frustrated, the policy of the Bankruptcy Code, noting that the goals of "the prompt administration of bankruptcy estates and protection of the 'fresh start' objective of the Code by allowing the debtor to enjoy finality and certainty of relief . . . are best fostered, not by a rigid jurisdictional approach, but by the exercise of equitable discretion in a manner consistent with the policies that animate the Bankruptcy Code." *Id.* at 732 (internal citation omitted). Specifically, the Court noted that "[w]ere we to hold that these rules were jurisdictional, bankruptcy judgments would be subject to collateral attack after the bankruptcy court has completed its work and after the parties have complied with the court's mandate," a "situation clearly at odds with the purpose of promoting finality and certainty of relief." *Id*. (internal citation, quotations omitted).

None of this Court's prior precedent has squarely addressed a circumstance like that present here: a claimant powerless to assert a timely challenge to bankruptcy discharge because the claimant had no basis to make the claim at all. *See, e.g., Choi v. Promax,* 486 B.R. 541, 546 (N.D. Ga. 2012) ("In *Alton*, *Williamson* and *Lett*, the circuit was unsympathetic to creditors' explanations for why they had the missed the deadline and were entitled to equitable relief;" noting that "the deadlines in the bankruptcy code were clean and the record showed in all three cases that the creditor

had actual notice of the bankruptcy case and were not prevented from complying with the deadlines set forth in the code.").

In *Alton*, the creditor had a pending claim against the debtor and actual notice of the bankruptcy and, therefore, the ability to timely challenge discharge or seek to extend that deadline. Similarly, in the Court's unpublished, non-binding decision in *In re Mendenhall*, 572 F.App'x 858, 862 (11th Cir. 2014),[9] the Court cited *Alton* and concluded that a bankruptcy court had properly denied an untimely motion for an extension of the deadline for filing a dischargeability complaint. But the parties did not raise *Kontrick* and the Court did not directly address whether Rule 4007 may be tolled on equitable grounds. *See id.* at 862 n.2 (noting that *Kontrick* did not reach the question of the equitable tolling of Rule 4007 deadlines).

Several courts within this Circuit have noted the unresolved nature of the equitable tolling question post-*Kontrick*, despite the holding in *Alton. See, e.g.*, *In re Hardin*, No. 18-70395, 2019 WL 2612752, at *2 (Bankr. N.D. Ga. June 24, 2019) ("[T]he scope of any equitable exception to the application of Rule 4007 is an open question in the Eleventh Circuit.") (internal quotation omitted); *In re Withrow*, 570 B.R. 452, 457-58 (Bankr. N.D. Ga. 2017) ("*Kontrick* leaves open the question of whether a plaintiff may assert an equitable defense in opposition to a motion to

---

[9] *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

dismiss an untimely filed complaint. It is an open question in the Eleventh Circuit."); *In re Donnan*, 465 B.R. 340, 342 (Bankr. M.D. Ga. 2012) ("To date, the Eleventh Circuit has also declined to rule on whether equitable tolling affords relief from the Rule 4007 deadline."); *In re Bryan*, 448 B.R. 866, 868, n.3 (Bankr. M.D. Ga. 2011) ("Both the Supreme Court and the Eleventh Circuit have declined to rule on whether equitable tolling affords relief from the bar date.").[10]

Because Rule 4007 is not jurisdictional, there is a presumption that equitable tolling is available. *See Locke*, 471 U.S. at 94 n.10. As the Seventh Circuit underscored in *Kontrick*, permitting equitable exceptions is fully consistent with the Bankruptcy Code's goals. And fundamentally, permitting equitable exceptions is good policy. The Bankruptcy Court in this case did not consider the result here just and for good reason: denying equitable tolling to victims of fraud who had no reason or means to assert a timely complaint for discharge serves no legitimate purpose; it

---

[10] TL notes that in *Anwar v. Johnson*, 720 F.3d 1183, 1187-88 & n.6 (9th Cir. 2013), the Ninth Circuit held that the bankruptcy court "lacked equitable power" to grant a retroactive extension of the Rule 4007 deadline, concluding that the Bankruptcy court's equitable powers were constrained by the "deadlines set by the Federal Rules of Bankruptcy Procedure." The Ninth Circuit cited *Kontrick* and noted the circuit split, but the court did not discuss *Kontrick*'s rationale. TL respectfully submits that the court's rationale cannot be squared with *Kontrick*, since the Ninth Circuit interposed the Bankruptcy *rules* as a limit on a Bankruptcy court's equitable powers, when "[o]nly Congress may determine may determine a lower federal court's subject matter jurisdiction." *Kontrick*, 540 U.S. at 452.

29

simply rewards the very misconduct by fraudulent debtors that Section 523(a) seeks to preclude.

It is undisputed in this case — following full briefing and a hearing in which the Bankruptcy Court made express findings incorporated into written orders that Ford did not appeal — that TL had no ability to assert a timely complaint objecting to discharge. Indeed, it is uncontested that TL lacked the factual basis to assert a fraud claim as of the claims bar date, much less a reason to have invoked the Bankruptcy discovery process. TL was permitted on excusable neglect grounds to file a late claim, which it did. That claim will at a minimum give TL the right to a set-off. But it would only reward Ford's improper manipulation of the bankruptcy process to limit that claim to a set-off, rather than to allow TL the opportunity afforded by Section 523(c) to prove its entitlement to *all* of its damages for Ford's fraud. Ford provided TL notice of his bankruptcy, not because he had listed TL as a creditor, but as part of scheme to strip TL of the protections of Section 523(a)(3)(B). And he did so because he knew that TL lacked access to Ford's own records, records that showed his own misconduct. Until TL obtained those records through the ordinary course of discovery in the Wisconsin litigation, TL had no basis to assert a claim against Ford for fraud.

It would be fundamentally contrary to the interests of justice to deprive TL the opportunity to prove that it is entitled on equitable tolling grounds to seek a

Bankruptcy Court determination of dischargeability. Through no fault of its own and without any ability to protect its interests, TL would be deprived of its ability to ultimately collect its full damages against Ford based upon a conspiracy to defraud. TL accordingly urges the Court to hold that lower courts have discretion to apply equitable tolling to the deadlines in Rule 4007. In doing so, the Court need not determine whether equitable tolling should apply here. These requirements are exacting and will rarely be satisfied except in the most egregious of cases like the facts present here. But abandoning the *Alton* rule already undermined by *Kontrick* will ensure that lower courts are better able to serve the interests of justice by taking into account equitable considerations when, as here, the strict application of Rule 4007 deadlines would unjustly deprive a faultless creditor of a claim he had no knowledge of as a result of a debtor's fraud and bad faith.

### E.    The Court Should Re-Affirm the Due Process Exception.

The Court recognized in *Alton* that regardless of whether Rule 4007 is subject to equitable tolling, due process provides an avenue for federal courts to extend the Rule 4007(c) deadline. 837 F.2d at 460-61 & n.4. TL raised due process as an alternative ground for relief, separate from equitable tolling. *See, e.g.,* ECF No. 467 at 9-10; ECF No. 485 at 6-12.

In the Bankruptcy court, Ford made the remarkable contention that it is permissible for a debtor: (1) to fail to list a disputed claim of conspiracy to defraud

31

TL (a claim of which the conspiring debtor was well aware, but of which TL was entirely unaware on the petition date); (2) to withhold evidence concerning the fraud and conspiracy from TL, but nonetheless (3) to discharge the fraud on the ground that TL received notice of the *bar date*, even though TL had no Rule 9011 basis to file a proof of claim before the bar date. *See* ECF No. 472 at 2.

Ford cited no authority for that proposition because it was fundamentally contrary to due process. Indeed, *DPWN Holdings* makes it clear that when a claimant lacks a Rule 9011 basis to file a claim before the bar date, but obtains the information afterwards, the circumstance is a "faultless omission to act" under *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993). *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 246 F. Supp. 3d 680, 692 (E.D.N.Y. 2017).

In *Pioneer*, the Supreme Court articulated the "spectrum" of circumstances that constitute "excusable neglect." At one end are circumstances "beyond" a claimant's "control." *Id.* at 387. At the other are deadlines missed for "inadvertence, miscalculation, or negligence." In determining whether there has been "excusable neglect," courts consider "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether

the movant acted in good faith." *Pioneer*, 507 U.S. at 395. *See also In re Weinraub*, 351 B.R. 779, 781 (Bankr. S.D. Fla. 2006) (citing *Pioneer*).

As the Court made clear in *Pioneer*, when the delay is not within the reasonable control of the movant, that factor standing alone is sufficient to find excusable neglect. Specifically, the Court noted that "[h]ad respondents here been prevented from complying with the bar date by an act of God or some other circumstance beyond their control, the Bankruptcy Court plainly would have been permitted to find 'excusable neglect.'" *Pioneer*, 507 U.S. at 394. *See also In re Weinraub,* 351 B.R. at 781 ("excusable neglect" inquiry is equitable determination requiring court to consider "all relevant circumstances surrounding a party's omission"). And that was true without any inquiry concerning prejudice. *See Pioneer*, 507 U.S. at 393 (*citing Klapprott v. United States*, 335 U.S. 601, 613–614 (1949) (permitting relief from default judgment four years after its entry because "the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control")).

Granting an extension in these circumstances should be entirely within the courts' power, as the Court contemplated in *Alton.* Denying an extension would be inconsistent with due process because TL could not have protected its rights by asserting a timely Section 523(c) complaint; it had no basis to assert a fraud claim

33

in the first place as of the deadline, as the Bankruptcy Court explicitly held.

Ford failed to address this independent grounds for TL to file its Section 523(a) complaint below. In its September 17, 2020 filings, TL expressly invoked due process as a ground for granting it leave to file a late Proof of Claim and a Section 523(a) adversary proceeding. *See, e.g.,* ECF No.467 at 10. Ford ignored TL's due process arguments, contending instead solely that the Court lacks the power to equitably toll the Rule 4007(c) deadline. *See* ECF Nos. 472, 509.

This Court should affirm, as contemplated in *Alton* itself and well settled in other bankruptcy cases, that due process provides an independent ground to extend Rule 4007(c) in appropriate circumstances.

*First*, it is well settled that every federal court action — including those of Bankruptcy Courts — must be consistent with due process. "When applying the Bankruptcy Code or its Rules strictly would deny a claimant due process rights in violation of the Fifth Amendment, then the Constitution must take precedence and the Code or its rules must be set aside or modified in their application." *In re Smith*, 379 B.R. 315, 326 (Bankr. N.D. Ill. 2007) (quotations and citations omitted). Under the Supreme Court's landmark decision in *Mullane*, "reasonable notice" is a fundamental component of due process. 339 U.S. at 314. In turn, "reasonable notice" means "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action *and* afford them an opportunity to

present their objections. *Id.* (emphasis added). It is axiomatic that one cannot present a non-existent objection.

*Second*, following *Mullane*'s command, Bankruptcy Courts have for decades used due process as a basis for extending deadlines, including specifically to file a Section 523(a) claim — notwithstanding the language of particular code provisions or rules. For example, in *In re Smith*, the court found that "Debtor's false oath concerning the accuracy of his bankruptcy schedules, his financial motive for failing to schedule Plaintiffs, and the skeletal last-minute notice of his bankruptcy case all imply a deliberate effort by Debtor and his bankruptcy and state court lawyers to hinder Plaintiffs' ability to protect their rights in bankruptcy." 379 B.R. at 331. The court permitted the claimant to file a Section 523(a) claim, notwithstanding the Rule 4007 deadline. *Id.* Here, Ford admits that he did not list TL as a creditor. If TL's allegations concerning Ford's conspiracy to defraud are true — allegations based on evidence that Ford withheld — then it inexorably follows that Ford's schedules were knowingly false. Nothing suggests that a debtor comports with due process by simply alerting an entity to the existence of a bankruptcy while concealing from the entity the evidence necessary to present a claim.

As another example, many courts have followed the practice of extending the Rule 4007 deadline expressly on due process grounds when a debtor provides notice before the bar date, but in a time insufficient to file a Proof of Claim. *See, e.g., In re*

*Jones*, 492 F.3d 242, 249, 253 (5th Cir. 2007) ("a claim asserted by a creditor against a debtor's estate cannot constitutionally be discharged in accordance with the Bankruptcy Code unless the debtor provides constitutionally adequate notice to the creditor of the debtor's bankruptcy proceeding;" finding that failure to give actual notice to known creditor meant that creditor was "not bound by the terms of the confirmed liquidation Plan"); *id*. at 252 ("a disputed claim, if known, must be listed as a known claim in the appropriate schedule accompanying a debtor's initial petition for bankruptcy relief"); *In re Robbins*, 2007 WL 1174334, at *4 (Bankr. E.D. Tenn. Apr. 19, 2007) ("[w]hen a debtor does not afford a creditor due process, either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of a debt cannot be time-barred under Fed. R. Bankr.P. 4007(c)." (quoting *Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 800 (B.A.P. 10th Cir. 2003) (brackets by the court, internal quotation omitted)); *id*. at *6 ("four days notice was not reasonable notice under § 523(a)(3)(B)")); *id*. at *5 (collecting cases granting extensions on due process grounds); *id*. at *7 (finding fraud on the merits under Section 523(a)(2)(A)).

And as one further category, courts have refused on due process grounds to enforce deadlines under the rules when a pending action has been dismissed or stayed and is then revived after a Bar Date has lapsed. *See, e.g., In re Gully*, 400 B.R. 529, 539 (Bankr. N.D. Tex. 2009) (notwithstanding limitations on granting

*equitable* relief from deadlines, "where a case is disrupted, such as through a stay or dismissal, and a proof of claim deadline runs prior to the reinstatement of the case, a court has the power to nullify the original proof of claim deadline and recalculate it" because holding "otherwise offends notions of due process" (citing *State Bank & Trust, N.A. v. Dunlap (In re Dunlap),* 217 F.3d 311, 315 (5th Cir. 2000) (extending deadline that had lapsed for dismissed case) and *Coston v. Bank of Malvern*, 987 F.2d 1096, 1099 (5th Cir. 1992) (extending deadline that had lapsed when case was stayed in favor of parallel proceeding before being revived)).

And in *DPWN Holdings*, the court unequivocally stated that it would offend due process to require a potential claimant to file a claim before the bar date when it was not on inquiry notice that it even had a claim. 246 F. Supp. 3d at 692 ("Here, and in any situation where inquiry notice was triggered after the pre-petition bar date, the inquiry *will virtually always be subsumed by* the third [*Pioneer* excusable neglect] factor, i.e., when inquiry notice came to exist. This is because to prohibit a late proof of claim when the creditor does not have inquiry notice *would deprive the creditor of due process of law*.") (emphases added)).

TL submits that it is fundamentally contrary to the purposes of Section 523(a), due process, and basic principles of equity to permit Ford to bar TL from a dischargeability determination for Ford's fraud simply because of the fortuity that TL had notice of Ford's bankruptcy before the April 2019 claims bar date, but had

no basis to have asserted a claim against Ford for conspiracy to defraud at that time and, accordingly, no grounds to file a dischargeability complaint either. Other victims of fraud could similarly be denied the opportunity to pursue their claims fully if equitable and due process exceptions cannot be applied to the time limit in Rule 4007.

The Bankruptcy Court granted TL leave to file a proof of claim (ECF No.514) (which TL timely filed, *see* Claim 4), and granted relief from the automatic stay to pursue its counterclaims against Ford in the Wisconsin litigation (ECF No.513) (which TL is actively pursuing). But unless TL is granted leave to file a complaint under Section 523(c) seeking a non-dischargeability determination, TL will be deprived its full damages and Ford will profit from his fraud through no fault of TL whatsoever and, in part, due to Ford's concealment of his own misconduct.

Just as the circumstances supporting equitable tolling will be rare, so too will the circumstances supporting a due process exception. As the Court acknowledged in *Alton*, the question is whether the creditor had the ability to protect itself prior to the deadline. But unlike the creditor in *Alton*, TL had no pending claim against Ford by the time of the bar date, so notice of Ford's bankruptcy afforded TL no protection at all.  TL had no knowledge of a claim to assert and could not protect its interests at that time. TL accordingly urges the Court to reaffirm that due process provides an

independent ground in appropriate circumstances to extend the Rule 4007(c) deadline.

## **CONCLUSION**

For the foregoing reasons, TL respectfully requests that the Court reverse paragraph 2 of the Bankruptcy Court's October 13, 2020 Order (ECF No.514) to the extent that the Order denied TL's request to file a complaint seeking a non-dischargeability determination under Section 523(c), and hold that courts have discretion to consider equitable and due process grounds as a basis for extending the deadline under Bankruptcy Rule 4007 for filing a Section 523(c) complaint.

Dated: March 24, 2021

Respectfully submitted,
/s/ Neil Lloyd_____

SCHIFF HARDIN LLP
Neil Lloyd
Lawrence H. Heftman
233 S. Wacker Dr., Ste. 7100
Chicago, IL 60606
nlloyd@schiffhardin.com
lheftman@schiffhardin.com

*Attorneys for TL 90108, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Appellant TL 90108, LLC, certifies the following in compliance with Federal Rule of Appellate Procedure 32:

This Brief complies with the type-volume limitations of Fed. R. App. P. 5(c)(1) and 32(f), because this Brief contains 9,810 words, excluding the portions exempted by Fed. R. App. P. 32(f).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman.

Dated:  March 24, 2021

*Neil Lloyd*

Neil Lloyd

*Attorney for TL 90108, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2021, the foregoing **Brief of Appellant** was filed electronically with the Clerk of the Court using the CM/ECF system.

I further certify that on March 24, 2021, one original and six copies of the Brief of Appellant were dispatched for delivery to the Clerk's office of the United States Court of Appeals for the Eleventh Circuit via priority overnight Federal Express to the following address:

> John Ley, Clerk
> U.S. Court of Appeals for the 11th Circuit
> 56 Forsyth Street N.W.
> Atlanta, Georgia 30303

*/s/ Neil Lloyd*

Neil Lloyd

41